

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
~~WILLWILSON~~xxxx
ATTORNEY GENERAL

Honorable T. M. Trimble
Firt Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. 0-6550
Re: Under the facts submitted what tax
rate can be assessed and collected
by the independent school district
that is to be formed in Jefferson
County?

We are in receipt of your letter of May 3, 1945, in which you enclose a
letter from Mr. W. J. Holloway, Superintendent of the Fort Naches Schools.
Mr. Holloway submits the following question:

"The present board would like to know the following information:
(1) No. 16 was formed by special law of the 39th Leg., H. B.
#5, Ch. #153, page 363, which granted No. 16 the power to
assess and collect the $1.50 tax rate. The board would like
to know if this $1.50 tax rate can be assessed and collected
by the independent district that is to be formed. (2) If the
$1.50 tax rate will not be legal for the independent district
that is to be formed, what is the status of the school tax
rate, that is, will the independent district so formed have
a $1.00 tax rate as provided by the general law, or will the
independent district have to vote on the tax rate? (3) If the
independent district should vote on the tax rate of the
general law as provided of $1.00, and should defeat the $1.00
tax levy, what would be the status of the bonded indebtedness?"

Replying to the foregoing inquiry, it is our opinion that since Common
School District No. 16 was created by a special law granting it the power
to assess and collect a $1.50 tax rate, such power would not follow to
an independent school district after the conversion of Common School
District No. 16 into an independent school district. No. maintenance
tax could be collected by the independent school district until such
district, by a vote of the qualified property taxpaying voters of the
district authorized the same. In the case of Pyote Independent
School District v. Dyer, 34 S. W. |2d| exact page 580, the Court said:

"* * *When the county school board of Ward County entered its order creating Pyote independent school district out of old common school district No. 4. the old district ceased to exist and all maintenance taxes theretofore voted by it ceased to be in force. This being the case, no power existed in any tax levying body to levy further maintenance taxes on the property of of the district until the new district should vote such tax in the way and manner provided by law and by the Constitution. Futhermore, the commissioners' court never has the power to levy maintenance taxes for independent school districts. Such tax must be levied by the local board. R. C. S. of Texas 1925, articles 2784 and 2790; also the local board usually levies all bond taxes of an independent district. R. C. S. of Texas 1925, arts. 2784 and 2788. There is one exception to this rule, and in our opinion that exception is not involved here. The exception mentioned is where, after change in school districts, or the creation of new districts out of the old districts, there has been no provision by assumption of the indebtedness or otherwise for the payment of the bonds that are outstanding against the old district, and such facts are certified to the commissioners' court by the county school board, then it is the duty of the commissioners' court to annually levy a tax for the purpose of paying the old bonded indebtedness. See section 11, c. 84, Acts First Called Session Fortieth Legislature (1927) supra, p. 232 (Vernon's Ann. Civ. St. art. 2742b, sec. 11). No such condition existed here. In fact, the opposite is shown, as the district prodeeded with all possible dispatch to organize itself and assume the bonds of the old district by a vote of the people, as provided for in the act. Such being the case, the commissioners' court had no authority for the levy of taxes to pay the bonds of the old common school district. In no event would this power exist unless the new district had failed to provide for the payment thereof, and the other things provided by the act had transpired.* * *"

In the case of Bigfoot Independent School District v. Genard, 116 S. W. (2d) 804, (confirmed by the Supreme Court) the Court said:

"Where, after consolidated school district had voted a maintenance tax, the consolidated district was regularly converted into an independent district, the independent district could not impose the maintenance tax without having first obtained approval of voters of new district, notwithstanding the independent district embraced the identical territory which formed the consolidated district."

By converting the common school district created by special law into an independent school district, the authority given the common school district to levy a $1.50 tax rate would not be available to the independent school district since the independent school district would be controlled by the general law, which fixes the school tax rate at $1.00 on the $100 valuation; and the tax of $1.00 on the $100 valuation would not be in effect until authorized by a vote of the property taxpayers of the district.

If the independent school district should vote on the tax rate as provided of $1.00 on the $100 valuation, and should defeat the $1.00 tax levy, the bond tax would remain in effect but would have to be levied by the commissioners' court since such tax was a continuing tax levy at the time the bonds were issued and remains a charge against all the property situated in said district at the time the bonds were authorized.

Yours very truly

ATTORNEY GENERAL OF TEXAS

s/ C. F. Gibson

By
C. F. Gibson
Assistant

CFG: EP/ ldw

APPROVED MAY 16, 1945
s/ GROVER SELLERS
FIRST ASSISTANT
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY B. W. B.
CHAIRMAN